**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| XIANGYUAN ZHU, | ) |
| | ) |
|          **Plaintiff,** | ) |
| | )     **CIVIL ACTION** |
| v. | ) |
| | )     **No. 05-2139-KHV** |
| ST. FRANCIS HEALTH CENTER and | ) |
| KENNEN THOMPSON, M.D., | ) |
| | ) |
|          **Defendants.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Xiangyuan Zhu *pro se* brings suit against St. Francis Health Center, Inc. ("St. Francis") and Kennen Thompson, M.D., asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (Count 1) and state law claims of conspiracy (Count 2); constructive trust (Count 3); fraud, misrepresentation and concealment (Count 4); invasion of privacy (Count 5); tortious/negligent misrepresentation (Count 6); failure to perform a duty (Count 7); and deceptive and unconscionable practices (Count 8).  Plaintiff seeks unspecified monetary damages, punitive damages and equitable relief in the form of an accounting and divestiture of wrongfully obtained funds.

This matter comes before the Court on Defendants' Motion to Dismiss And For Sanctions (Doc. #8) filed May 12, 2005, Defendants' Motion To Dismiss Plaintiff's Amended Complaint And Motion For Sanctions (Docs. #12, 13) filed May 26, 2005,[1] plaintiff's Motion For Extension Of Time

---

[1]     The clerk's office has designated defendants' combined motion to dismiss the amended complaint and motion for sanctions, filed May 26, 2005, as separate documents.

To File Response As To Motion To Dismiss Plaintiff's Amended Complaint And Motion For Sanctions (Doc. #15) filed June 23, 2005, plaintiff's Motion To Strike Motion To Dismiss Plaintiff's Amended Complaint And Motion For Sanctions (Doc. #20) filed July 9, 2005, Defendants' Motion For Sanctions (Doc. #23) filed August 26, 2005, plaintiff's Motion For Extension Of Time To File Response As To Motion For Sanctions (Doc. #24) filed September 12, 2005, plaintiff's Motion To Amend/Correct Motion For Extension Of Time To File Response As To Motion For Sanctions (Doc. #25), filed September 29, 2005, plaintiff's Motion For Defendants' And Foulston Siefkin LLP's Compliance Sanction (Doc. #27) filed October 3, 2005, plaintiff's Motion To Strike Reply To Response To Motion For Sanctions, (Doc. #30) filed November 6, 2005, plaintiff's Motion For Leave To File Reply To Defendants' Response To Motion (Doc. #33) filed December 3, 2005, and plaintiff's Motion To Amend Amended Complaint (Doc. #36) filed December 6, 2005.

### Facts

On April 11, 2005, plaintiff filed her complaint. On May 12, 2005, plaintiff filed an amended complaint which alleges the following:

In early July of 1999, plaintiff was working for the Federal Home Loan Bank of Topeka ("the Bank"). At the advice of an attorney in the Bank's employee assistance program, plaintiff reported to police that realtor Marc Bunting had sexually assaulted her on June 30, 1999. Plaintiff then went to see her family physician, Dr. Thompson, who worked for St. Francis. Dr. Thompson referred plaintiff to Jonathan Farrell-Higgins, Ph.D., for treatment of post-traumatic stress disorder ("PTSD") and a sleep disorder.

On January 28, 2000, plaintiff saw Dr. Thompson for treatment of PTSD and neck pain and headaches which she suffered after a car accident on September 1, 1999. On February 23, 2000,

-2-

plaintiff again saw Dr. Thompson and told him that Dr. Troy Counselman had examined her on September 3, 1999 and determined that her neck was out of alignment because of the accident. Dr. Thompson wrote in plaintiff's medical record that plaintiff had a "questionable history of neck pain." On June 28, 2001, plaintiff saw Dr. Thompson's nurse practitioner for severe right knee pain. In June of 2001, plaintiff again saw Dr. Thompson for treatment of her PTSD and sleep problems that resulted from alleged retaliation at work and a criminal prosecution against her by Bunting. Dr. Thompson referred her to William Johns, D.O., who prescribed medication which made plaintiff very sleepy in the morning.

On July 26, 2001, the Bank fired plaintiff for not following a 7:30 a.m. to 4:30 p.m. schedule. Plaintiff saw Dr. Thompson for treatment several times after that, including on August 31, 2001, for severe bodily pain including neck pain, headaches and right shoulder pain. Dr. Thompson prescribed physical therapy but did not discuss with plaintiff the option of obtaining radiologic or blood tests.

On September 4, 2001, St. Francis mailed plaintiff a statement which included charges for oxygen, a chest x-ray and other services which it had not provided her.

On June 10, 2002, plaintiff gave Dr. Thompson a Psychological Test Report by Dr. George Hough, Ph.D. Plaintiff told Dr. Thompson that the report was confidential and that he was not to disclose the information under any circumstances. Plaintiff asked Dr. Thompson to return the report after he reviewed it. Dr. Thompson copied the report before he returned it to plaintiff. On October 25, 2002, plaintiff sought treatment from Dr. Thompson for pain on her right side from her head to her lower extremity. Dr. Thompson told plaintiff that she could pursue radiologic studies or blood tests, but that he did not think she could afford these tests because her health insurance had lapsed in August, 2002.

On December 6, 2002, Dr. Thompson provided a copy of Dr. Hough's report to Deanna McKune, who had been involved in the car accident with plaintiff on September 1, 1999. On March 4, 2003, Dr. Thompson dismissed plaintiff as his patient under the pretext that she was pressuring him to give her legal advice. On April 15, 2003, Dr. Thompson testified as an expert witness for McKune in a grand jury investigation of the car accident. Dr. Thompson fraudulently testified that plaintiff had never told him that the car accident caused her physical injuries. He also fraudulently testified that plaintiff's subjective complaints of injury did not fit any illness or cause that he could identify, when he had never told plaintiff this. Further, Dr. Thompson fraudulently testified that plaintiff attributed her erratic sleep schedule to psychological pressure from her uncle. Dr. Thompson testified that plaintiff pursued psychological consultation on her own, even though plaintiff's health insurance had required a referral from plaintiff's family physician to receive psychological or psychiatric treatment. Dr. Thompson fraudulently testified that plaintiff had had affairs with Dr. Ferell-Higgins. Dr. Thompson used a one-time prescription of risperdal to "frame plaintiff as psychosis."

On April 23 and May 19, 2003, Dr. Johns testified that because plaintiff was at risk for psychosis, "I thought, what the heck, give it a shot and I started her on [risperdal], which is an anti-psychotic agent. I started her on it just to see what would happen because sometimes you can get benefits, you know, from things that are not totally apparent." Plaintiff alleges that Dr. Johns knew that his testimony was false because on a disability insurance form he had checked a statement that plaintiff was able to function in most stress situations and engage in only limited interpersonal relations (slight limitations). Dr. Johns did not state in plaintiff's medical records that she was psychotic. Both Dr. Farrell-Higgins and Dr. Hough indicated in their records that plaintiff was

psychotic.  On May 29 and June 30, 2003, Dr. Johns mailed plaintiff a fraudulent medical bill for

$400.00 for a psychiatric evaluation on April 23, 2003 and professional services on May 19, 2003.

Based on these facts, plaintiff alleges that

The activities of St. Francis, Dr. Thompson and the various others as yet known and unknown in the formation and execution of the scheme to defraud and to hinder, prevent or dissuade plaintiff Zhu from attending or testifying in an official proceeding, and to interfere with Zhu's primary right of securing the blessings of liberty to herself, securing lawful employment, having a family and raising her child in her own country of the United States in connection with the health care services has a pervasive and debilitating impact on plaintiff Zhu's general welfare.

Amended Complaint (Doc. #9) filed May 12, 2005, ¶ 46.  Plaintiff asserts claims under RICO, 18

U.S.C. § 1961 et seq. (Count 1), and state law claims of conspiracy (Count 2); constructive trust

(Count 3); fraud, misrepresentation and concealment (Count 4); invasion of privacy (Count 5);

tortuous/negligent misrepresentation (Count 6); failure to perform a duty (Count 7); and deceptive

and unconscionable practices (Count 8).  As noted, plaintiff seeks unspecified monetary damages,

punitive damages and costs, equitable relief in the form of an accounting and divestiture of

wrongfully obtained funds.

Defendants assert that res judicata bars this lawsuit because plaintiff has already raised these

claims in a prior lawsuit in the District Court of Johnson County, Kansas.[2]  In that lawsuit, filed May

26, 2004, plaintiff named as defendants St. Francis, Dr. Thompson and two other entities.  See

Defendants' Motions To Dismiss And For Sanctions Doc. 8-1, Ex. A.  Plaintiff alleged that

---

[2]    The Court takes judicial notice of the Johnson County lawsuit, Case No. 04-CV03979. See Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of allegations in state court complaint); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504-05 (9th Cir. 1986) (taking judicial notice of allegations made in motion to dismiss and supporting memorandum filed in different federal court action).

-5-

Dr. Thompson provided medical care and treatment to plaintiff from January 25, 1998 to March 4, 2003.  Plaintiff alleged that Dr. Thompson's actions fell below the medically acceptable standard of care in the community.  Plaintiff claimed Dr. Thompson "published defamatory statements with actual knowledge that it were [sic] false, or with reckless disregard as to their truth or falsity, or negligently." Id. at ¶ 54.  Plaintiff claimed that Dr. Thompson's "defamatory statements are material because they relate to matters that are so substantial as to influence, which including but not limited to, the plaintiff's professional, business, occupation, health insurance and her future marriage." Id. at ¶58.  Plaintiff claimed that Dr. Thompson "misrepresented the injuries Ms. Zhu sustained from the rear-end collision on September 1, 1999 at his testimony for Deanna L. McCune which resulted in an erroneous and misleading statement of Ms. Zhu's injuries she sustained from the rear-end collision on September 1, 1999.  This constituted fraud, misrepresentation, invasion of privacy, and or negligence in the M.D. defendant Mr. Thompson's performance of the service of health care which he charged plaintiff for her office visits between January 25, 1998 and March 4, 2003." Id. at ¶ 59.  Plaintiff claimed Dr. Thompson was an employee of St. Francis.  Plaintiff claimed damages as follows:

> That prior to the rape, the rear-end collision, the inhumane treatment by Mr. Bunting and his co-conspirators in the courts and at her job place, and the M.D. defendant Thompson's co-conspiracy malpractice, as described above, plaintiff was a healthy able-bodied woman of forty-five years of age, having a Ph.D. degree in economics from University of Oklahoma and working as the Sr. Risk analyst at Federal Home Loan Bank of Topeka, and that as a direct and proximate result of the rape, the rear-end collision, the inhumane treatment by Mr. Bunting and his co-conspirators in the courts and at her job place, and the M.D. defendant Mr. Thompson's co-conspiracy malpractice, as described above, which including but not limited to, the M.D. defendant Mr. Thompson's

a. Commission of acts of gross negligence or multiple acts of ordinary negligence;

b. Conspiracy to interfere with plaintiff's rights, including but not limited to, her rights under the Privacy Rule;

c. Fraudulent or defamatory statements published to injuring plaintiff under pretext of his testimony for Deanna L. McCune;

d. Prescribing drugs or treatments for other than lawful purposes; and

e. The inability to practice the healing arts with reasonable skill and safety to the patient plaintiff by reason of illness, or any mental or physical condition,

plaintiff has sustained damages, including but not limited to, injury to her body in the past and future, severe pain in the past and future, and mental anguish in the past and future, and the expenditure of sums for medical treatment, lost earnings, damages to earning capacity, statutory damages. She has further sustained pecuniary loss of professional, business, and personal reputation, because the defamation made by the M.D. defendant Mr. Thompson. She has been involuntary unemployed since July 26, 2001; she has been forced to sell her resident house, her car; she has to repay her student loans. She and her child are living on a lonely island of poverty without any health insurance in the midst of a vast ocean of material prosperity. Ex. A at ¶ 61.

On July 22, 2004, St. Francis moved to dismiss plaintiff's claims against it. On August 11, 2004, plaintiff objected to St. Francis' motion to dismiss and amended her petition to allege that "St. Francis has failed to prevent or aid in preventing any wrongs mentioned in section 1985 of Title 42 which it had knowledge were about to occur and had power to prevent. This racially minority woman plaintiff was clearly placed outside the protection of the law in the United States. Therefore, St. Francis has violated Equal Protection." Doc #8, Ex. C. at ¶ 7.

On September 15, 2004, the Honorable Thomas E. Foster of the District Court in Johnson County, Kansas dismissed with prejudice all claims against St. Francis and two other defendants. He also dismissed with prejudice all claims against Dr. Thompson except a possible claim of medical malpractice. Judge Foster ordered plaintiff to serve upon Dr. Thompson a more definite statement regarding her claim for medical malpractice. On January 31, 2005, plaintiff amended her petition.

-7-

On February 18, 2005, Judge Foster heard arguments on Dr. Thompson's motion to dismiss. Plaintiff appeared and argued at the hearing.  On February 24, 2005, the court dismissed with prejudice plaintiff's remaining claims against Dr. Thompson.

## Legal Standards

## Rule 12(b)(6) Motion To Dismiss

A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (further quotations omitted).  The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987).  In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support her claims. Although plaintiff need not precisely state each element of her claims, she must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court affords a *pro se* plaintiff some leniency and must liberally construe the complaint.  See Oltremari v. Kan. Soc. & Rehab. Serv., 871 F. Supp. 1331, 1333 (D. Kan. 1994). While *pro se* complaints are held to less stringent standards than pleadings drafted by lawyers, *pro se* litigants must follow the same procedural rules as other litigants.  See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992).  The Court may not assume the role of advocate for a *pro se* litigant. See Hall, 935 F.2d at 1110.

## Rule 15(a) Standards

Fed. R. Civ. P. 15(a) provides that a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Otherwise, a party may amend only by leave of court or written consent of the adverse party, and leave shall be freely given when justice so requires. Although Rule 15(a) requires that leave to amend "be freely given when justice so requires," whether leave should be granted is within the trial court's discretion. See Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1462 (10th Cir. 1991). In this regard, the Court considers undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party or futility of amendment. Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993).

## I.   Preliminary Matters

Before the Court are several unopposed motions by plaintiff for extensions of time and leave to file certain motions. Pursuant to D. Kan. Rule 7.4, if a respondent fails to file a timely response, "the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." The Court therefore finds that plaintiff's Motion For Extension Of Time To File Response As To Motion To Dismiss Plaintiff's Amended Complaint And Motion For Sanctions (Doc. #15) filed June 23, 2005, plaintiff's Motion For Extension Of Time To File Response As To Motion For Sanctions (Doc. #24) filed September 12, 2005, plaintiff's Motion To Amend/Correct Motion For Extension Of Time To File Response As To Motion For Sanctions (Doc. #25), filed September 29, 2005, and plaintiff's Motion For Leave To File Reply To Defendant's Response To Motion (Doc. #33) filed December 3, 2005, should be sustained.

## II.   Defendants' Motion To Dismiss Plaintiff's Amended Complaint

Defendants assert that the Court should dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) because the doctrine of res judicata bars each of plaintiff's claims.

Res judicata includes both claim preclusion and issue preclusion.  Issue preclusion, or collateral estoppel, prevents re-litigation of an issue by a party against whom the issue has been conclusively determined in a prior action.  Hall v. Doering, 997 F. Supp. 1445, 1459 (D. Kan. 1998); Am. Home Assurance Co. v. Pac. Indem. Co., 672 F. Supp. 495, 498 (D. Kan. 1987); Crutsinger v. Hess, 408 F. Supp. 548, 551 (D. Kan. 1976); Jackson Trak Group, Inc. v. Mid States Port Auth., 242 Kan. 683, 690, 751 P.2d 122, 128 (1988); see also Phelps v. Hamilton, 122 F.3d 1309, 1318 (10th Cir. 1997).

Claim preclusion, on the other hand, prevents parties or their privies from re-litigating a cause of action that has been finally adjudicated by a court of competent jurisdiction.  Am. Home Assurance, 672 F. Supp. at 498; Crutsinger, 408 F. Supp. at 551.  It applies not only to claims that were actually litigated, but also to claims that should have been litigated in the first action but were not.  Am. Home Assurance, 672 F. Supp. at 498; Jackson Trak Group, 242 Kan. at 690, 751 P.2d at 128; Penachio v. Walker, 207 Kan. 54, 56-57, 483 P.2d 1119, 1121 (1971); see also Phelps, 122 F.3d at 1320.  Claim preclusion is a bar to a second action upon the same claim, demand or cause of action.  Penachio, 207 Kan. at 57, 483 P.2d at 1121.  It is founded upon the principle that the party, or some other with whom she is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction.  Id.; see also Griffith v. Stout Remodeling, Inc., 219 Kan. 408, 548 P.2d 1238, 1240 (1976) (where two actions bottomed on same set of facts, final adjudication on merits in earlier action generally res judicata in later one).  If a

plaintiff fails to present all grounds or theories for relief arising from the single wrong, she may not split the cause of action or claim by bringing a subsequent suit that alleges new theories. Parsons Mobile Prods., Inc. v. Remmert, 216 Kan. 138, 140, 531 P.2d 435, 437 (1975); Carter v. City of Emporia, Kan., 815 F.2d 617, 621-22 (10th Cir. 1987); see also Oxbow Energy, Inc. v. Koch Indus., Inc., 686 F. Supp. 278, 282 (D. Kan.1988) (all claims arising out of single wrong must be prosecuted in one action).

Res judicata is an affirmative defense on which defendant has the burden of proof. See Fed. R. Civ. P. 8(c); Nwosun v. Gen. Mills Rests., Inc., 124 F.3d 1255, 1256 (10th Cir. 1997). For the doctrine to apply, four elements must exist: (1) a judgment on the merits in the earlier action; (2) identity of the parties or privies in the two suits; (3) identity of the cause of action in both suits; and (4) a full and fair opportunity for plaintiff to litigate the claim in the first suit. Id. at 1257.

As set out above, the doctrine of res judicata precludes the parties from re-litigating issues that were or *could have been* raised in the prior action. Klein v. Zavaras, 80 F.3d 432, 434-35 (10th Cir. 1996). Under the full faith and credit provision of 28 U.S.C. § 1738, a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 83-85 (1984) (Section 1983 did not prevent judgment in state court proceeding from creating claim preclusion bar in federal court). But cf. Morgan v. City of Rawlins, 792 F.2d 975, 978-980 (10th Cir. 1986) (applying Wyoming claim preclusion law, finding that where factual issues under Section 1983 were not focus of prior state proceeding, plaintiff did not have full and fair opportunity to litigate federal claim and claim preclusion did not bar action under Section 1983).

The Court finds that as a matter of law, plaintiff's claims are barred. The first two elements of res judicata are clearly met. Further, although plaintiff has changed her theories of recovery to some extent, as set out above, Kansas applies the transactional approach. Here, plaintiff's theories for relief all arise from Dr. Thompson's treatment of plaintiff, his testimony regarding that treatment, the billing for that treatment and vague allegations of conspiracy between Dr. Thompson, St. Francis and others. Plaintiff may not split her cause of action and bring a subsequent suit that alleges new theories. Parsons Mobile Prods., 216 Kan. at 140, 531 P.2d at 437; Carter, 815 F.2d at 621-22; see also Oxbow Energy, 686 F. Supp. at 282 (all claims arising out of single wrong must be prosecuted in one action).

Finally, the Court must evaluate whether plaintiff had a full and fair opportunity to litigate claims before a court with authority to adjudicate the merits of those claims. Carter, 815 F.2d at 621 (plaintiffs had full and fair opportunity to litigate claims in court with authority to adjudicate them; plaintiffs could have brought federal claims in state court action, or could have proceeded in federal court in preference to state court). A "full and fair opportunity" means there is no "reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Montana v. United States, 440 U.S. 147, 164 n. 11 (1979). Here, plaintiff had a full and fair opportunity to litigate in state court her claims that defendants conspired to violate her rights under RICO,[3] and that defendants in violation of state law committed and conspired to commit fraud, misrepresentation and concealment, invasion of privacy, tortuous/negligent misrepresentation, failure to perform a duty and deceptive and unconscionable practices. In other words, plaintiff could have brought all of her claims in the state

---

[3]    See Tafflin v. Levitt, 493 U.S. 455 (1990) (state courts have concurrent jurisdiction over civil RICO claims).

court action.  The record discloses no reason to doubt the quality, extensiveness or fairness of

procedures followed in state court.  Because her claims were or could have been raised in state court,

she cannot bring them in a subsequent action in federal court.

**III.     Motion To Amend Amended Complaint**

Plaintiff seeks leave to amend her amended complaint.  Defendants assert that the proposed

second amended complaint for the most part merely reiterates the facts asserted in the amended

complaint.  Defendants contend that any additional facts are irrelevant to plaintiff's claims against

them.  The Court has carefully reviewed the proposed second amended complaint.  The claims set

out in the proposed second amended complaint arise from the same series of transactions as those

set out in plaintiff's first amended complaint, and likewise are barred by res judicata.  The Court

therefore finds that plaintiff's motion to file the proposed second amended complaint should be

overruled as futile.

**IV.     Motions For Sanctions**

a.     Defendants' Motions For Sanctions

On May 12, 2005, defendants filed a combined motion to dismiss plaintiff's complaint and

for sanctions.  See Doc. #8.  On May 26, 2005, defendants filed a combined motion to dismiss

plaintiff's amended complaint and for sanctions.  See Docs. #12, 13.[4]  On July 6, 2005, Magistrate

Judge David J. Waxse noted that defendants had informed the Court that they were withdrawing their

requests for sanctions.  Magistrate Waxse therefore deemed defendants' motions for sanctions

withdrawn.  On July 9, 2005, plaintiff filed her Motion To Strike Motion To Dismiss Plaintiff's

_____

[4]     For clerical purposes, the clerk's office designated the combined motion as separate
documents.

-13-

Amended Complaint And Motion For Sanctions (Doc. #20).  Because Magistrate Waxse had already

ruled that defendants' had withdrawn the motions for sanctions, plaintiff's motion to strike

defendants' motion for sanctions is moot, and her motion to strike defendants' motion to dismiss

plaintiff's amended complaint is overruled.

On August 26, 2005, defendants filed another motion for sanctions.  See Doc. #23 filed

August 26, 2005.[5]  Defendants seek sanctions against plaintiff under Rule 11, Fed. R. Civ. P. because

all of the claims which plaintiff asserts are precluded by the doctrine of res judicata.  Defendants

assert that by filing the complaint and amended complaint, plaintiff acted in an objectively

---

[5]      Plaintiff's Motion To Strike Reply To Response To Motion For Sanctions (Doc. #30) filed November 6, 2005, seeks to strike defendants' reply (Doc. #29) regarding defendants' motion for sanctions because it was filed out of time.  Defendants filed their reply more than two weeks late and without leave of Court.  Defendants note that Fed. R. Civ. P. Rule 12(f) does not provide for striking motions, and ask the Court to consider their untimely reply because of excusable neglect. See D. Kan. Rule 7.4 (failure to respond within time specified constitutes waiver of right to thereafter file such response, except upon showing of excusable neglect).

The Supreme Court analyzed the excusable neglect standard in Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 392 (1993).  Excusable neglect is a "somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Id. at 392.  On the other hand, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."  Id.  In determining whether the excusable neglect standard is met, courts should consider all relevant circumstances, including "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith."  Id. at 395.  Control over the circumstances of the delay is a very important factor -- perhaps the most important single factor in determining whether neglect is excusable.

Defendants claim that they filed their reply late because "it was overlooked prior to final review."  Doc. # 31 at 3.  Considering the factors listed above, the Court finds that the delay was entirely within the control of defendants' counsel.  On the other hand, defendants' delay has caused no prejudice to plaintiff and no material delay of the proceedings.  Likewise, the Court has no reason to believe that defendants or their attorney acted in bad faith.  On this occasion, because the delay was relatively short and occasioned no prejudice to opposing parties or the judicial process, the Court will not disregard defendants' reply brief.

unreasonable manner with the purpose of harassing defendants and increasing their litigation costs.

Rule 11 provides that by signing her complaint, plaintiff certifies that "it is not being presented

for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the

cost of litigation" and "the claims, defenses, and other legal contentions therein are warranted by

existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law

or the establishment of new law." Fed. R. Civ. P. Rule 11(b). Rule 11 authorizes the Court to impose

sanctions on parties unrepresented by counsel who file frivolous pleadings which are not

well-grounded in law. The Court finds that plaintiff's complaint and amended complaint violate Rule

11.

Defendants urge the Court to award as sanctions their costs in defending the instant action,

including but not limited to defendants' attorneys fees. See Fed. R. Civ. P. Rule 11(c)(2). Plaintiff

notes that defendants filed two prior improper motions for sanctions without following the Rule 11

safe harbor provision.[6] See Rule 11(c)(1)(A) (litigant must wait 21 days after service of request for

sanctions before filing Rule 11 motion with the Court). Plaintiff asserts that because defendants have

twice improperly asked for sanctions, the Court should not sustain defendants' properly presented

motion for sanctions.

---

[6]     Under Fed. R. Civ. P. 11(c)(1)(A), a motion for sanctions "shall be made separately
from other motions or requests and shall describe the specific conduct alleged to violate subdivision
(b)." Also under Fed. R. Civ. P. 11(c)(1)(A), a motion for sanctions shall be served as provided in
Rule 5, but shall not be filed with or presented to the Court unless, within 21 days after service of the
motion (or such other period as the Court may prescribe), the challenged paper, claim, defense,
contention, allegation or denial is not withdrawn or appropriately corrected. Defendants' first two
motions for sanctions were contained in their motions to dismiss and were not made separately from
other motions.

The Court has wide discretion in selecting an appropriate sanction. White v. Gen. Motors Corp., 908 F.2d 675, 683 (10th Cir. 1990). Rule 11 sanctions serve several purposes, including deterring future litigation abuse, punishing present litigation abuse, compensating victims of litigation abuse and streamlining court dockets and facilitating case management. Id. The appropriate sanction should be the least severe sanction adequate to deter and punish the plaintiff. Id. at 684. Although the Court finds that plaintiff violated Rule 11 by filing this lawsuit, it also notes that defendants filed two improper motions for Rule 11 sanctions before filing the current motion for sanctions. The Court awards defendants their costs, including attorney fees, for filing the current motion for sanctions and for opposing plaintiff's motion to file a second amended complaint. Because plaintiff proceeds *in forma pauperis*, the Court believes that a greater award would be more than needed to deter plaintiff from filing further frivolous lawsuits and to punish her for her present litigation abuse.

The time to end this litigation is well past. Plaintiff has now filed five cases in this Court. Except for her first lawsuit, the cases which have proceeded to judgment have not resulted in any relief for plaintiff. See Zhu v. Countryside Realty Co., Inc., 165 F. Supp. 2d 1181 (D. Kan. Aug. 10, 2001) (No. 01-2067-KHV and No. 00-2290-KHV); Zhu v. Fisher, Cavanaugh, Smith & Lemon, P.A., 151 F. Supp. 2d 1254 (D. Kan. Feb. 7, 2001) (No. 00-2329-KHV); see also Zhu v. Fed. Hous. Fin. Bd., 2005 WL 2874996 (D. Kan. Nov. 2, 2005) (No. 04-2539-KHV) (now pending before this Court). The majority of plaintiff's suits, however, are not merely without merit. They appear to be manifestly abusive, overreaching and straining on court resources. Should plaintiff continue the pattern which she has exhibited to date, the Court will not hesitate to impose harsher sanctions in the future.

The right of access to the courts is neither absolute nor unconditional and the Constitution confers no right to prosecute frivolous or malicious actions. See Winslow v. Hunter, 17 F.3d 314, 315 (10th Cir. 1994). "The goal of fairly dispensing justice . . . is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous [claims]." In re Sindram, 498 U.S. 177, 180 (1991).

The Tenth Circuit has stated that filing restrictions are a harsh sanction, and that litigiousness alone is not a sufficient reason to restrict access to the court. Where a party has "engaged in a pattern of litigation activity which is manifestly abusive," however, restrictions are appropriate. Johnson v. Cowley, 872 F.2d 342, 344 (10th Cir. 1989). Plaintiff's abusive and repetitive filings have strained the resources of this Court, and undoubtedly the defendants as well. See In re McDonald, 489 U.S. 180, 184 (1989). In the future, the Court will not hesitate to impose restrictions commensurate with the Court's inherent power to enter orders "necessary or appropriate" in aid of the Court's jurisdiction. 28 U.S.C. § 1651. Such restrictions may include monetary sanctions and/or an order prohibiting plaintiff from proceeding without the representation of a licensed attorney who is admitted to practice in this Court, unless she first obtains permission to proceed *pro se.* See In re Winslow, 17 F.3d at 315-16.

b.      Plaintiff's Motion For Sanctions

Plaintiff asks the Court to impose sanctions on defendants for filing the two prior motions for Rule 11 sanctions. See Motion For Defendants' And Foulston Siefkin LLP's Compliance Sanction (Doc. #27) filed October 3, 2005. Because defendants voluntarily withdrew the improper motions

for sanctions before plaintiff responded to them, the Court finds that sanctions against defendants would be inappropriate.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss And For Sanctions (Doc. #8) filed May 12, 2005, and Defendants' Motion For Sanctions (Doc. #13) filed May 26, 2005 be and hereby are **OVERRULED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' Motion To Dismiss Plaintiff's Amended Complaint (Doc. #12) filed May 26, 2005, be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that plaintiff's Motion For Extension Of Time To File Response As To Motion To Dismiss Plaintiff's Amended Complaint And Motion For Sanctions (Doc. #15) filed June 23, 2005, plaintiff's Motion For Extension Of Time To File Response As To Motion For Sanctions (Doc. #24) filed September 12, 2005, plaintiff's Motion To Amend/Correct Motion For Extension Of Time To File Response As To Motion For Sanctions (Doc. #25), filed September 29, 2005, and plaintiff's Motion For Leave To File Reply To Defendant's Response To Motion (Doc. #33) filed December 3, 2005, be and hereby are **SUSTAINED**.

**IT IS FURTHER ORDERED** that plaintiff's Motion To Strike Motion To Dismiss Plaintiff's Amended Complaint And Motion For Sanctions (Doc. #20) filed July 9, 2005, plaintiff's Motion For Defendants' And Foulston Siefkin LLP's Compliance Sanction (Doc. #27) filed October 3, 2005, plaintiff's Motion To Strike Reply To Response To Motion For Sanctions, (Doc. #30) filed November 6, 2005, and plaintiff's Motion To Amend Amended Complaint (Doc. #36) filed December 6, 2005 be and hereby are **OVERRULED**.

**IT IS FURTHER ORDERED** that <u>Defendants' Motion For Sanctions</u> (Doc. #23) filed August 26, 2005, be and hereby is **SUSTAINED** in part.  Defendants are entitled to their costs, including attorney fees, related to filing their motion for sanctions (Doc. #23)[7] and to filing their brief in opposition (Doc. #37) to plaintiff's motion to file a second amended complaint.  The parties are directed to follow the procedure set forth in D. Kan. Rule 54.2, except that the time deadlines shall be as follows.  On or before February 10, 2006, defendants shall file a fee application which itemizes all fees and costs for which they seek reimbursement.  If the parties reach agreement regarding the fee request, they shall file an appropriate stipulation on or before February 21, 2006.  If the parties are unable to agree, on or before February 24, 2006, defendants shall file the required statement of consultation and supporting memorandum.  Plaintiff may respond on or before March 6, 2006 and defendants may reply on or before March 14, 2006.

**The Clerk is directed to enter judgment for defendants.**

Dated this 6th day of February, 2006 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

---

[7]        Defendants are not entitled to costs of filing their untimely reply brief (Doc. #31).